UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ROBERT ISLEY, AND
LARRY MARTIN,

    Plaintiffs,

Case No. 05-70720

v.

Honorable Patrick J. Duggan

THE FORD MOTOR COMPANY,

    Defendant.
_____/

**OPINION AND ORDER
GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND
GRANTING DEFENDANT'S MOTION FOR SANCTIONS UNDER RULE 11**

At a session of said Court, held in the U.S.
District Courthouse, Eastern District
of Michigan, on JUNE 8, 2005.

PRESENT:    THE HONORABLE PATRICK J. DUGGAN
                 U.S. DISTRICT COURT JUDGE

On February 24, 2005, Plaintiffs Robert Isley and Larry Martin filed an action in this Court alleging violations of 42 U.S.C. § 1981. Presently before the Court is Defendant's Motion for Summary Judgment, filed April 4, 2005, and Defendant's Motion for Sanctions Under Rule 11, filed April 26, 2005. A hearing was held on June 2, 2005. For the reasons set forth below, Defendant's Motion for Summary Judgment and Defendant's Motion for Sanctions Under Rule 11 are granted.

I.   **Background**

   A. <u>**Factual Background**</u>

Plaintiffs are Canadian citizens who reside in Canada and are employees of Ford. Plaintiffs contend that they are employees of Ford Motor Company in Michigan. Defendant, however, contends that Plaintiffs are employees of Ford of Canada whose day-to-day job assignments require that they commute to Michigan. Defendant pays Plaintiffs in Canadian dollars.

In November 2001, Isley filed a charge of discrimination with the Equal Employment Opportunity Commission (EEOC) alleging that Ford had denied him "American wages because of [his] National Origin (Canadian), in violation of Title VII of the Civil Rights Act of 1964, as amended." The EEOC dismissed the charge after it determined that Isley's Canadian origin was a non-factor in Ford's decision to maintain Isley on the payroll of Ford Canada.[1]

   B. <u>**Procedural Background**</u>

On December 13, 2002, Plaintiffs filed suit in the Wayne County Circuit Court alleging that they had been discriminated against in violation of Michigan's Elliott-Larsen Civil Rights Act ("Elliott-Larsen"), MICH. COMP. LAWS ANN. § 37.2202(1)(a). (Def.'s Mot. Ex. 2). In that Complaint, Plaintiffs alleged that they were paid "the identical salary as other engineers at Ford Motor Company US, however, each plaintiff would be tendered his salary in Canadian, not U.S. dollars." (*Id.* at ¶ 11).

---

[1] There is nothing in the record indicating that Martin ever filed a charge of discrimination with the EEOC.

2

On March 22, 2004, the Circuit Court entered an order directing the case to arbitration and on April 17, 2004, the arbitrator held a hearing. On June 29, 2004, the arbitrator issued a decision. (Def.'s Mot. Ex. 6). In his decision, the arbitrator identified the following issue for arbitration: "Does discrimination on the basis of Canadian residence violate the prohibition on national origin discrimination found in the Elliott-Larsen Civil Rights Act?" (*Id.* at 2). The arbitrator concluded that although national origin is a protected characteristic under Elliott-Larsen, foreign residency was not included within the term "national origin." (*Id.* at 3). The arbitrator denied Plaintiffs' claims.

Plaintiffs moved to vacate the arbitration decision, contending that the arbitrator ruled on an issue of law already decided by the Circuit Court. In their motion, Plaintiffs argued that the definition of national origin under Elliott-Larsen included citizenship and residency, which the arbitrator had disregarded. (Def.'s Mot. Ex. 7, Pls.' Br. in Supp. of Mot. to Vacate). Plaintiffs' motion to vacate the arbitration decision was denied and their claim was dismissed. (Def.'s Mot. Ex. 8, Or. Denying Pls.' Mot. to Vacate and Dismissing Act, dated August 13, 2004).

On February 24, 2005, Plaintiffs filed a Complaint in this Court alleging that Ford violated 42 U.S.C. § 1981 by "intentionally discriminating against plaintiffs in compensation for the same of [sic] similar work." (Compl. at ¶11). On April 4, 2005, Defendant filed a Motion for Summary Judgment. In its Motion, Defendant seeks to dismiss Plaintiffs' Complaint based on the prior state court judgment under the doctrines of collateral estoppel and res judicata.

On April 26, 2005, Defendant filed its separate Motion for Sanctions. In compliance

3

with the "safe harbor" provision of Rule 11, FED. R. CIV. P. 11(c)(1)(A), Defendant first served the Plaintiffs with the motion on April 1, 2005.

## II.  Standard of Review

This Court will grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). No genuine issue of material fact exists for trial unless, by viewing the evidence in a light most favorable to the nonmoving party, a reasonable jury could return a verdict for that party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510 (1986). The moving party bears the burden of informing this Court of the basis for its motion and identifying those portions of the record that establish the absence of a material issue of fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 2553 (1986).

Once the moving party has met its burden, Rule 56(e) requires the nonmoving party to look beyond the pleadings and designate specific facts showing that a genuine issue exists for trial. FED. R. CIV. P. 56(e); *Celotex*, 477 U.S. at 322-24, 106 S. Ct. at 2552-53. It is not enough that the nonmoving party comes forward with the "mere existence of a scintilla of evidence . . . ," *Anderson*, 477 U.S. at 252, 106 S. Ct. at 2512, or some "metaphysical doubt as to the material facts." *Matsishita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S. Ct. 1348, 1356 (1986). Rather, the nonmoving party must present significant probative evidence in support of its opposition to the motion for summary judgment. *Moore v. Philip Morris Cos., Inc.*, 8 F.3d 335, 340 (6th Cir. 1993).

### III. Applicable Law and Analysis

The Full Faith and Credit Act, 28 U.S.C. § 1738, requires a federal district court to "give to a state-court judgment the same preclusive effect as would be given that judgment under the law of the State in which the judgment was rendered." *Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75, 81, 104 S. Ct. 892, 896 (1984); *Vinson v. Campbell Fiscal Court*, 820 F.2d 194, 197 (6th Cir. 1987). "This principle applies to civil rights actions . . . with respect to issues actually litigated (collateral estoppel or issue preclusion) and issues which could have been but were not litigated in the state court proceeding (res judicata or claim preclusion)." *Vinson*, 820 F.2d at 197.

#### A. Collateral Estoppel

Under Michigan law, three elements must be satisfied for the doctrine of collateral estoppel or issue preclusion to apply:

(1) a question of fact essential to the judgment must have been actually litigated and determined by a valid and final judgment;

(2) the same parties must have had a full [and fair] opportunity to litigate the issue; and

(3) there must be mutuality of estoppel.

*Monat v. State Farm Ins. Co.*, 469 Mich. 679, 683-84, 677 N.W.2d 843, 845-46 (2004) (quoting *Storey v. Meijer, Inc.*, 431 Mich. 368, 373 n.3, 429 N.W.2d 169, 171 n.3 (1988)).

#### B. Res Judicata

In addition to collateral estoppel, res judicata also applies to bar Plaintiffs from litigating their 42 U.S.C. § 1981 claim which Plaintiffs could have raised in the prior proceeding, but did not. *See, e.g.*, *VanDeventer v. Mich. Nat'l Bank*, 172 Mich. App. 456,

464, 432 N.W.2d 338, 342 (1988) ("Michigan courts apply the res judicata doctrine broadly so as to bar claims that were actually litigated as well as claims arising out of the same transaction which a plaintiff could have brought, but did not."). For res judicata to apply, three elements must be satisfied:

(1) the prior action must have been decided on the merits;

(2) the matter contested in the second case was or could have been resolved in the first; and

(3) both actions involve the same parties.

*Energy Reserves, Inc. v. Consumers Power Co.*, 221 Mich. App. 210, 215-16, 561 N.W.2d 854, 859 (1997).

In this case, all three elements of collateral estoppel and res judicata are satisfied.

With respect to collateral estoppel, the issue was identical, i.e., whether discrimination based on residence violated the prohibition against discrimination based on national origin.

In the circuit court action, the judge referred the matter to arbitration. The arbitrator identified the "issue for arbitration" as: "Does discrimination on the basis of Canandian residence violate the prohibition on national origin discrimination found in the Elliott-Larsen Civil Rights Act?" In his decision, the arbitrator found:

> It is undisputed that Canadian citizens working for Ford who reside in the United States are paid in American funds. . . . Thus, it is clear on this record that plaintiffs are treated differently and less favorably because of their place of residence, not their Canadian national origin or heritage.
>
> * * *
>
> Neither Martin nor Isley speak with a 'foreign accent,' and nothing about their appearance or physical characteristics or their names would suggest they might attract intentional discrimination because they are Canadian. A stranger entering the arbitration room would have had difficulty distinguishing between the

6

> Canadians and the Americans present based upon their appearance or speech.
>
> * * *
>
> Ford's policy of paying employees based on the cost of living in their home country is a matter of economics, not culture–at least when it comes to Canada.
>
> * * *
>
> Thus, the heart of the matter is that Martin and Isley are paid in Canadian funds not because they are Canadian, but because they are residents of Canada. National origin is a protected characteristic, while residency is not. . . .

(Def.'s Mot. Ex. 6, Arbitrator's Decision at 2-3).

Plaintiffs filed a motion to vacate the arbitrator's award; Defendant filed a motion to confirm the arbitration award. On August 13, 2004, the circuit court judge entered an order denying Plaintiffs' motion to vacate the arbitration award and granting Defendant's cross-motion for confirmation of the arbitration decision.

It is clear that the decision of the circuit judge confirming the arbitration award was, in effect, a decision by the circuit court that the arbitrator's decision that discrimination based on residence is not discrimination based on national origin and therefore, that Plaintiffs' complaint must be dismissed.

It is also clear that Plaintiffs' complaint in this action alleges discrimination based on residence. The allegations in Plaintiffs' complaint asserting that the Plaintiffs are treated differently based on where they "live,"[2] leaves no doubt that Plaintiffs are asserting

---

[2] The only paragraph in Plaintiffs' complaint which refers to the alleged discriminatory conduct states, "Ford Motor Company has a company policy in which the company pays employees with PRV's that live in the United States in U.S. dollars while paying employees with PRV's that live in Canada in Canadian dollars." (Compl. at ¶7).

discrimination based on residence. This is the exact issue that was decided by the Wayne County Circuit Court.

Plaintiffs contend that because, in their view, § 1981 gives Plaintiffs more protection than Elliott-Larsen, they are not barred from bringing the action in this Court under § 1981. Whether or not § 1981 provides "more protection" for Plaintiffs, Plaintiffs' counsel acknowledged at the hearing on June 2, 2005, that he could have brought this § 1981 claim in the circuit court action along with the Elliott-Larsen claim. Because the alleged discrimination here involves the exact same conduct that was the basis of the claim in circuit court and the same parties, Plaintiffs' claims are barred because they failed to bring their § 1981 claims in the state court.

### C. **Defendant's Request for Rule 11 Sanctions**

Defendant asks the Court to impose sanctions against Plaintiffs pursuant to Rule 11 of the Federal Rules of Civil Procedure because Plaintiffs seek to relitigate issues already conclusively decided by the Michigan court. Rule 11 provides that by presenting to the court a pleading, written motion or other paper, an attorney "is certifying that to the best of his or her knowledge, information, and belief, formed after an inquiry reasonable under the circumstances," the document satisfies the following:

> (1) it is not being presented for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation;
>
> (2) the claims, defenses, and other legal contentions therein are warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law;

> (3) the allegations and other factual contentions have evidentiary support or, if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery; and
>
> (4) the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on a lack of information or belief.

FED. R. CIV. P. 11(b).

In their Response, Plaintiffs contend that their claim was not frivolous nor was it designed to harass. Plaintiffs argue that 42 U.S.C. § 1981 expands discriminatory protection to both "citizenship and residency."

In their brief in opposition to Defendant's motion for sanctions, Plaintiffs assert,

> "The legal issue that arose out of the Wayne County Circuit Court case is whether citizenship is a protected class under the Elliott-Larsen Civil Rights Act.
>
> Judge Gillis of the Wayne County Circuit Court held that citizenship was a protected class when he DENIED Defendant's M.C.R. 2.116(c)(a)'s summary disposition motion. The case was sent to arbitration. The arbitrator ruled that citizenship was not a protected class and therefore no caused the arbitration. (See Arbitration Decision, Ex. 3 of Def.'s Br.)."

(Pls.' Resp. at 3).

Plaintiffs are mistaken. The issue of whether or not "citizenship" was a protected class was not the issue decided by the arbitrator. As set forth above, the arbitrator specifically identified the issue as whether or not discrimination on the basis of "Canadian residence" violates the prohibition on national origin. In his decision, the arbitrator specifically stated, "The difference in the treatment complained of stems from residence, not national origin." It was this decision that the circuit judge "affirmed" when he confirmed the arbitration award. As set forth above, Plaintiffs' complaint filed in this Court, asserts discrimination

9

based on residency - - not citizenship.[3] Furthermore, Plaintiffs have cited no case, and this Court is unaware of any case, that holds that discrimination based on "residency" violates the prohibition on national origin discrimination under 42 U.S.C. § 1981.

Therefore, in this Court's opinion, Plaintiffs' counsel did not have a good faith belief that Defendant's discrimination based on residency was a violation of the prohibition on national origin discrimination and therefore actionable under § 1981.

More significantly, however, to the issue of sanctions is that in complying with the "safe harbor" provision of Rule 11 and by letter dated March 16, 2005, Defendant specifically informed Plaintiffs' counsel that Plaintiffs' claims in the present lawsuit were barred as a matter of law because such claims could have and should have been brought in the state court action. As it is clear to this Court that Plaintiffs' claims are barred, as set forth above, both by the doctrine of collateral estoppel and res judicata, it should have been apparent to Plaintiffs' counsel that Plaintiffs' asserted claims could not succeed. Therefore, because:

(1) Plaintiffs' counsel had no case law to support his claim that discrimination based on residency might violate the federal constitution and therefore be actionable under § 1981[4]; and

---

[3]In fact, Defendant has asserted, and Plaintiffs have not disputed, that Defendant does not discriminate based on "citizenship." Defendant asserts that Canadian citizens who are residents of Michigan, are paid in U.S. dollars. See also, arbitrator's finding, "It is undisputed that Canadian citizens working for Ford who reside in the United States are paid in American funds." (Arbitrator's Decision at 2.)

[4] If Plaintiffs had believed that "residency" discrimination was actionable under Elliott-Larsen - - Plaintiffs should have appealed the circuit court decision.

10

(2) Plaintiffs' counsel should have been aware that even if, arguably, residency discrimination was actionable under § 1981, such claims could have and should have been brought in the state court action and failure to do so would bar the claim subsequently brought in a federal court lawsuit.

Therefore,

**IT IS ORDERED** that Defendant's Motion for Summary Judgment is **GRANTED**, and

**IT IS FURTHER ORDERED** that Defendant's Motion for Sanctions is **GRANTED**.

_____
s/PATRICK J. DUGGAN
UNITED STATES DISTRICT JUDGE

Copies to:

Richard A. Meier, Esq.
Maurice G. Jenkins, Esq.